IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| WILLIAM MARSHALL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. |
| | * | 1:20cv-108 |
| WINN DIXIE STORES, INC., a | * | |
| foreign corporation, | * | |
| | * | |
| Defendant. | * | |

---

## *FIRST AMENDED COMPLAINT FOR DAMAGES*

---

COMES NOW the Plaintiff William Marshall (hereinafter "MARSHALL") in the

above-styled case and files his First Amended Complaint for Damages, as follows:

## PROCEDURAL

1.

By order of the Court, the Defendant Winn-Dixie Stores, Inc. (hereinafter

"HARVEY'S SUPERMARKET") has been substituted in place of the original Defendant,

Samson Merger Sub, LLC, d/b/a Harvey's Supermarket.

2.

This is an action in tort and jurisdiction lies in this Court.

3.

The Defendant Winn-Dixie Stores, Inc. (hereinafter "HARVEY'S SUPERMARKET") is a foreign corporation which may be served by serving its registered agent for service of process, to wit, CSC if Cobb County, Inc., at 192 Anderson Street SE, Suite 125, Marietta, Cobb County, Georgia.

4.

New Defendant's counsel or record, G. Robert Ryan, Jr. of Valdosta, Georgia, has agreed to acknowledge service of process on behalf of the Defendant Winn-Dixie Stores, Inc.

5.

Since the Defendant HARVEY'S SUPERMARKET transacts business in Dougherty County, Georgia, since said Defendant maintains an office in Dougherty County, Georgia, and since the tort which forms the subject matter of this action occurred in Dougherty County, venue is proper in this Court as to said Defendant.

# FACTS

### 6.

At all relevant times, the Defendant HARVEY'S SUPERMARKET owned and operated a grocery store which is known as Harvey's Supermarket and is located in the Cross Station Shopping Center at 2800 Old Dawson Road in Albany, Dougherty County, Georgia.

### 7.

Said grocery store is still owned and operated by the Defendant and continues to operate at said location.

### 8.

At all relevant times, there was a men's restroom inside said grocery store.

### 9.

At said times and inside said restroom was located a handicap stall.

### 10.

During those times, that stall contained a toilet and a sink.

### 11.

Prior to the injurious incident which forms the subject matter of this lawsuit, the toilet seat on said toilet had two plastic screw covers on either side of the back of the seat..

12.

Underneath each screw cover was a bolt.

13.

At all relevant times and if one sat on said toilet seat, the bolt on the right was missing the nut.

14.

At all relevant times, the toilet seat appeared to be in proper condition, the missing nut being concealed by the plastic screw cover.

15.

Said missing nut created a danger and mantrap for an unsuspecting customer, especially a heavier customer and one who is already handicapped, in that the missing nut created the propensity for the toilet seat to slide sideways.

16.

This sliding of the toilet seat sideways would be a sliding to the left if one is sitting on the toilet seat.

17.

This danger and mantrap remained in place at the time of the subject injurious incident on Saturday, May 11, 2019 at around 7:00 o'clock p.m. to around 9:00 o'clock p.m.

18.

At that time, Plaintiff MARSHALL, a 54-year-old gentleman, was a shopper at the subject Harvey's Supermarket store and sat on the toilet seat at issue.

19.

The Plaintiff MARSHALL had received a heart transplant at Emory University Hospital on November 22, 2015 and weighed approximately 323 pounds.

20.

The Plaintiff MARSHALL was a retired police officer and was married to Traci Marshall.

21.

In fact, Mrs. Traci Marshall was present at the subject grocery store at all relevant times leading to the subject injurious incident.

22.

Plaintiff MARSHALL had used that toilet seat without any incident on multiple ocassions in the past, the last such occasion being roughly one month prior.

23.

When the Plaintiff MARSHALL sat on the toilet seat on the ocassion at issue, everything appeared to be normal with the toilet seat.

24.

Plaintiff MARSHALL remained on the toilet seat without incident and defecated.

25.

Plaintiff leaned to his right without incident and grabbed toilet paper from a toilet paper receptacle mounted on the wall.

26.

Everything with the toilet seat up to this point in time was altogether normal.

27.

At that point in time and despite making reasonable use of his senses, Plaintiff MARSHALL never detected that the toilet seat was broken.

28.

Also, no warning signs had been posted anywhere warning Plaintiff that the toilet seat was broken or not to use the toilet.

29.

In addition, no one had otherwise given Plaintiff any such information or warning.

30.

Upon leaning to the left in order to position himself to wipe with the toilet paper, the toilet seat , all of a sudden and without warning, shifted leftward.

31.

As a result of said shifting leftward of the toilet seat and despite trying to catch himself with the right hand grabbing the handicap hand rail to his right, the Plaintiff MARSHALL was thrown onto the floor, landing in violent and injurious manner onto his left knee on the floor.

32.

The Plaintiff MARSHALL recalls looking at the toilet seat as he was on the floor and seeing that the side of the shifted toilet seat closest to the handicap rail had a bolt sticking out but was missing the nut.

33.

Also, the Plaintiff never heard a nut fall to the floor at anytime.

34.

Plaintiff MARSHALL also did not see a nut anywhere on the floor.

35.

Had the nut fallen off while Plaintiff was using the toilet seat, Plaintiff is certain that he would have heard the sound of the nut hitting the floor.

36.

As a result of that incident, Plaintiff MARSHALL sustained a serious left knee injury as well as a right shoulder injury.

37.

Plaintiff's wife, Traci Marshall, was able to enter the men's bathroom and enter the handicap stall, with outside assistance.

38.

Following the incident and while Plaintiff MARSHALL remained on the floor, employees of the Defendant remained disinterested and unmotivated in trying to assist Plaintiff MARSHALL.

39.

Shortly following the fall, Traci Marshall entered the men's bathroom.

40.

Plaintiff MARSHALL was on the floor of the stall.

41.

Traci Marshall could not get to Plaintiff because the door of the handicap stall was locked.

42.

So Traci Marshall exited the bathroom and found a young male employee of the store.

43.

That employee told her to talk to another employee nearby who happened to be tied

up with a female customer.

44.

After that second employee was free, Traci Marshall asked that employee for help but he told her that she would have to wait and began walking away from her.

45.

Traci Marshall told him no, that her husband was a heart transplant recipient, and that her husband had fallen in the bathroom, and that Traci needed the stall door unlocked now.

46.

A female manager then appeared and arranged to have the handicap stall door unlocked.

47.

Once that door was unlocked, Traci Marhsll entered and arranged Plaintiff's clothes in order to cover him.

48.

Traci was trying to sit Plaintiff MARSHALL up so that he could breathe because Plaintiff is not supposed to lay flat due to fluid retention issues.

49.

While trying to get Plaintiff in a more upright position, Traci Marshall noticed that

the second employee - the one that told her to wait - was taking photographs.

50.

One of the store employees called 911.

51.

Emergency personnel arrived.

52.

Ultimately, fire department personnel were able to lift Plaintiff MARSHALL to his feet. A combination of fire department personnel and ambulance personnel laid him onto a stretcher and secure him to the stretcher. Then, ambulance personnel evacuated Plaintiff from the scene, and transported him to a local hospital in connection with said knee injury and shoulder injury.

53.

On May 28, 2019 and on referral from his family doctor, Louise Wilder, MD, Plaintiff was referred to Phoebe Worth Medical Center in Sylvester, Georgia where he underwent x-rays to his left knee and right shoulder.

54.

Then, there was an unsuccessful attempt by Plaintiff to initiate treatment for the left knee injury with an orthopedic clinic in Tifton.

55.

It is believed to be on or about July 11, 2019 when Plaintiff began incident-related medical treatment for his left knee injury with orthopedic surgeon, John Waldrop, MD of the Hughston Clinic in Columbus, Georgia..

56.

Based on history, Dr. Waldrop noted that his left knee was asymptomatic prior to the subject incident.

57.

From the history, Dr. Waldrop found that the injury symptoms to Plaintiff's left knee were continuous since the injury, severe, aching, sharp, constant, and also involved popping and clicking.

58.

According to Dr. Waldrop's medical records, aggravating factors included walking, bending, squatting, weightbearing, going from sitting to standing, climbing up stairs, and climbing down stairs.

59.

Those medical records indicated that lessening factors were changing his position, and use of a wheelchair.

60.

During the examination of the left knee where Dr. Waldrop palpated different places of the knee, Dr. Waldrop detected tenderness in multiple areas.

61.

Dr. Waldrop determined that Plaintiff MARSHALL had underlying severe arthritis of the left knee, which left knee was without problems prior to the subject injury, and that the left knee trauma from the subject fall aggravated his knee so that he was now in need of left knee arthroplasty.

62.

Arthroplasty is the same thing as knee replacement.

63.

Dr. Waldrop scheduled the knee replacement surgery for August 8, 2019 at Piedmont Columbus Hospital in Columbus, Georgia.

64.

Meanwhile, Dr Waldrop instructed the Plaintiff to obtain medical clearance for the surgery from the cardiology department of Emory University Hospital in light of his heart transplant.

65.

The Plaintiff obtained cardiac clearance from Emory University Hospital on or

about August 7, 2019, following a visit there for that purpose on July 19, 2019.

66.

The Plaintiff MARSHALL was then medically cleared by his family doctor, Dr. Wilder, on July 26, 2019 for said knee replacement surgery.

67.

That knee replacement surgery was performed on or about August 8, 2019.

68.

In connection with that surgery, Plaintiff MARSHALL was hospitalized at Piedmont Columbus Hospital.

69.

Following that hospitalization, Plaintiff MARSHALL underwent post-operative physical therapy to the left knee at Hughston Clinic Leesburg from August 14, 2019 through September 26, 2019.

70.

Plaintiff MARSHALL was released from Dr. Waldrop's care on or about October 1, 2019.

## LIABILITY

### 71.

The Defendant failed to exercise ordinary care to keep the subject premises safe for its invitees in that said Defendant, by and through its employees, knew or should have known that the subject toilet seat was defective and unsafe but instead failed to either repair same or warn persons not to use the toilet.

### 72.

Alternatively or in addition, the jury can infer negligence of the Defendant HARVEY'S SUPERMARKET from the evidence that the subject toilet seat shifted and threw Plaitniff MARSHALL to the floor. Said inference is permissible under the doctrine of *res ipsa loquitor*.

## DAMAGES

### 73.

As the actual and proximate cause of the negligence of the Defendant as set forth above, the Plaintiff MARSHALL has sustained significant personal injury as set forth above. Said injuries have resulted in known medical expenses, to date, in an amount no

less than $75,609.51, and in an exact amount to be determined at trial.

74.

Due to the negligence of the Defendant as set forth above, the Plaintiff MARSHALL has incurred general damages as a result of his human losses, past, present, and future from the subject incident, from the resulting injuries, and from the resulting knee replacement procedure in an amount to be determined by the enlightened conscience of a fair and impartial jury at trial.

**DEMAND FOR A JURY TRIAL**

75.

The Plaintiff hereby demands a jury trial by a jury composed of twelve (12) fair and impartial persons on all issues triable by jury.

WHEREFORE, the Plaintiff prays as follows:

A)     That process issue as provided by law requiring the Defendant to file an answer to this cause of action;

B)     That judgment be granted in favor of the Plaintiff MARSHALL and against the Defendant for his incident-related medical expenses in an amount to be

determined at the time of trial;

C)    That judgment be granted in favor of the Plaintiff MARSHALL and against the Defendant for general damages due to his human losses, past, present, and future in an amount to be determined at the time of trial; and,

D)    That the Plaintiff be granted such other and further relief as this Court determines is just and proper.

This 27th day of July, 2020.

PHILLIPS & NEMAJOVSKY, P.C.
/s/ Alexander Nemajovsky
Alexander Nemajovsky
Georgia Bar No. 538228

532 Pine Avenue
Albany, GA 21701
(229) 439-9100
alex@pnpclaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day forwarded, via United States Mail,

postage prepaid, and with the Court's CM/ECF system, as prescribed by the Court, which

will automatically send email notification of such filing to the following counsel of record

a true and correct copy of the foregoing **First Amended Complaint for Damages** to the

following counsel of record, addressed as follows:

> G. Robert Ryan, Jr., Esq.
> Ryan Law Firm
> P.O. Box 2680
> Valdosta, GA 31604

This 27th day of July, 2020.

PHILLIPS & NEMAJOVSKY, P.C.
/s/ Alexander Nemajovsky
Alexander Nemajovsky
Georgia Bar No. 538228

532 Pine Avenue
Albany, GA 21701
(229) 439-9100
alex@pnpclaw.com